UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>THOMAS PRINS,<br><br>　　　　　　　Defendant. | Case No. 3:24-cv-05612-TMC<br><br>TEMPORARY RESTRAINING ORDER TO PROVIDE INVOLUNTARY MEDICAL TREATMENT |

　　　The United States Department of Homeland Security, Immigration and Customs Enforcement (hereinafter "ICE"), by and through the United States Attorney for the Western District of Washington, has filed an ex parte emergency motion for a temporary restraining order permitting the government to immediately perform involuntary medical monitoring, testing, and physical examinations for Thomas Prins, who is currently being held as a civil detainee at the Northwest ICE Processing Center in Tacoma, Washington.

　　　Mr. Prins is a citizen and national of Canada who has been detained at the Northwest ICE Processing Center since November 19, 2023. Dkt. 1-3 ¶ 4. On June 25, 2024, Mr. Prins was temporarily transferred to a different facility in Arizona and returned to the processing center on July 16. *Id.* ¶ 8. On July 17, Mr. Prins had missed his ninth consecutive meal and was officially

TEMPORARY RESTRAINING ORDER TO PROVIDE INVOLUNTARY MEDICAL TREATMENT - 1

listed as being on hunger strike. *Id*. ¶ 10. This is not his first hunger strike. *See In re Prins*, No. 3:24-MC-05006-TMC, 2024 WL 2749151, at *1–4 (W.D. Wash. May 29, 2024). He has not consumed any food since he initiated the hunger strike and has sporadically consumed water. Dkt. 1-4 ¶ 7. According to a declaration filed by Dr. Eddie Wang, the medical clinic director at the Northwest ICE Processing Center and board certified physician, Mr. Prins began his hunger strike while in Arizona because he wished to remain there. *Id*. ¶ 1, 9. He has since refused to allow processing center medical staff to conduct any medical assessments or provide medical care. *Id*. ¶ 7.

      A plaintiff seeking a temporary restraining order must show: (1) they are likely to succeed on the merits, (2) the potential for irreparable harm in the absence of preliminary relief, (3) the balance of equities is in favor of injunction, and (4) the relief sought is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). To obtain a temporary restraining order ex parte, the moving party must show specific facts in an affidavit that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). This Court's local civil rules also require the moving party to "serve all motion papers on the opposing party, by electronic means if available, before or contemporaneously with the filing of the motion and include a certificate of service with the motion." W.D. Wash. Local Civ. R. 65(b)(1).

      Here, the United States has filed affidavits from Dr. Wang and from Michael Winkle, Acting Assistant Field Office Director of the ICE office of Enforcement and Removal Operations (ERO), explaining the immediate and irreparable harm both to Mr. Prins's health and safety and the operations of ICE at the processing center if they are not able to evaluate Mr. Prins's condition. Dkt. 1-3, 1-4. Mr. Winkle's declaration also states that ERO informed Mr. Prins of its intent to seek a court order, Dkt. 1-3 ¶ 11, and the United States' motion was accompanied by a certificate

of service showing the motion will be hand-delivered to Mr. Prins. Dkt. 2 at 14.

In determining the United States' likelihood of success on the merits, the Court recognizes that federal courts are split on the applicable standard to evaluate the constitutionality of administering involuntary medical care, hydration, and nutrition to civil immigration detainees. *See In re Bahadur*, 441 F.Supp.3d 467, 475 (W.D. Tex. 2020) (discussing possible standards under *Turner v. Safley*, 482 U.S. 78 (1987), *Youngberg v. Romeo*, 457 U.S. 307 (1982), and *Bell v. Wolfish*, 441 U.S. 520 (1979)).

Under any of the standards articulated in *Turner*, *Youngberg*, and *Bell*, however, the Court finds that the United States' limited request in this motion—to conduct medical testing and examination to assess Mr. Prins's health status and detect dangerous changes to his condition—is likely to succeed on the merits when balancing the United States' interests in preserving the health and life of detainees in its custody against Mr. Prins's interest in refusing medical care and avoiding conditions of confinement that amount to unconstitutional punishment. Based on the declarations of Dr. Wang and Mr. Winkle, the Court finds that without the requested medical testing, immediate and irreparable injury will occur to the United States' interest in maintaining Mr. Prins's health and life, and that the immediate threat of this injury requires this order be issued before full notice and opportunity for Mr. Prins to be heard. *See* Fed. R. Civ. P. 65(b)(1), (2). The Court further finds that the balance of equities and the public interest favor entry of this limited temporary injunction.

Therefore, IT IS HEREBY ORDERED that ICE may undertake necessary medical treatment and testing to save Mr. Prins's life and prevent injury, including:

1. Physical examinations, including daily weight assessments and frequent vital sign checks;
2. Laboratory tests, consisting of:
    a. Complete metabolic panel.  This test reveals an increase in markers of kidney function in view of any renal injury.  The panel tests include: BUN (blood urea

nitrogen), creatinine level, and proteins. It also reveals electrolyte disturbances as potassium, phosphate, magnesium and glucose levels.
b. Complete blood count. This test reveals the hemoglobin level.
c. Urinalysis, which reveals the presence of ketones, blood and crystals in the urine.
d. Thiamine levels to assess deficiency after day 14 of a hunger strike.
e. Electrocardiogram, if the patient shows elevated potassium, which can lead to arrhythmias.
f. Creatine phosphokinase (CPK), which is an enzyme found inside muscle cells and is released into the blood when the muscle cells rupture. The increase in CPK can lead to the breakdown of muscle tissue that can fatally damage other vital organs.
g. Pre-albumin levels. Pre-albumin is used as a marker for nutritional status evaluation, and levels will decrease over time the longer a patient fails to consume adequate nutrition. The pre-albumin level correlates with patient morbidity and mortality risk. Normal pre-albumin is 15-35 mg/dL. When pre-albumin falls to 5-11 mg/DL, significant morbidity risks exist and aggressive nutritional support is necessary.

IT IS HEREBY FURTHER ORDERED that if Mr. Prins refuses to cooperate with the necessary medical treatment and monitoring, ICE and medical staff as the Northwest ICE Processing Center may use soft medical restraints to assure the safety of Mr. Prins and the medical staff when administering the necessary treatment.

This temporary order expires on August 14, 2024 unless it is extended by further order of this Court. *See* Fed. R. Civ. P. 65(b)(2). The Court will set a preliminary injunction hearing for August 13th, 2024 at 1:30 P.M. *See* Fed. R. Civ. P. 65(b)(3). The United States must be prepared to present evidence in support of its request for an injunction lasting for the duration of Mr. Prins's hunger strike and a representative of ICE must be present for the hearing. The United States must also file a status report, supported by affidavit, on Mr. Prins's condition and any supplemental briefing on its request for a longer injunction no later than August 12th, 2024 at 5:00 P.M. The United States must also arrange for Mr. Prins to appear by telephone or videoconference for the hearing. ICE is directed to provide a copy of this order and the notice of hearing to Mr. Prins as soon as possible.

Dated this 31st day of July, 2024.

	_____
	Tiffany M. Cartwright
	United States District Judge

TEMPORARY RESTRAINING ORDER TO PROVIDE INVOLUNTARY MEDICAL TREATMENT - 5